UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                             )   COURT FILE
UNITED STATES of AMERICA     )   NO. 14-CR-116 (JNE/HB)
                             )
        vs.                  )
                             )   Courtroom 12 West
ANTHONY MORRISON             )   Thursday, October 8, 2015
                             )   Minneapolis, Minnesota
------------------------------------------------------------


                    **S E N T E N C I N G**

                       **D A Y   1**


            BEFORE THE HONORABLE JOAN N. ERICKSEN
                UNITED STATES DISTRICT JUDGE



**A P P E A R A N C E S:**


For the Government:     **OFFICE OF THE U.S. ATTORNEY**
                        By:  DAVID P. STEINKAMP
                             Assistant U.S. Attorney
                        600 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415



For the Defendant:      **CASCARANO LAW OFFICE**
                        By:  CRAIG E. CASCARANO, ESQUIRE
                        150 South Fifth Street - Suite 3260
                        Minneapolis, Minnesota  55402



Court Reporter:         **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
                        Official Court Reporter - U.S.D.C.
                        1005 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415
                        612.664.5108

1    (2:45 p.m.)

2              **P R O C E E D I N G S**

3              **IN OPEN COURT**

4    (Defendant present)

5         THE COURT:  Good afternoon.  Please be seated.

6         United States vs. Morrison.  Counsel, would you

7    identify yourselves for the record, please.

8         MR. STEINKAMP:  Good afternoon, Your Honor.  David

9    Steinkamp for the United States.  Sarah Hudleston,

10   co-counsel in this case, is with me at the counsel table.

11        MR. CASCARANO:  Craig Cascarano on behalf of the

12   defendant, Your Honor, who is present in court.  Thank you.

13        THE COURT:  Let's talk first about the

14   calculations of the guidelines.

15        I have information from, as you all do, the

16   Government with respect to its notice that it is not going

17   to pursue one of what would be three qualifying priors.

18   That leaves two, and one of those two is addressed by the

19   defendant in his position with respect to sentencing.

20        In particular, that memorandum, which was filed on

21   Monday, just this last Monday, October 5th, argues that

22   paragraph 36 should not be included because the defendant

23   contends that that was actually for a different person, a

24   person by the name of Levelle Best, and not him.

25        Then I understand from the Government's submission

that the Government intends to try to prove that that's not true, that this Levelle Best really was Mr. Morrison. So that's the issue, first of all, first and foremost, that I'd like to get squared away.

Mr. Cascarano, you challenge the identity of the defendant identified in paragraph 36. Let me get that in front of me just so that I -- is that the trial, acquitted on a couple counts of sale within a thousand feet, convicted of Count 3, 4, et cetera? Do I have that -- am I remembering right?

MR. CASCARANO: That's the one, Your Honor.

THE COURT: Okay. Sure, come on up.

MR. CASCARANO: As I indicated in my memorandum, Judge, the U.S. Attorney and I have been working jointly to try to come to a resolution on this issue.

I have been provided by Mr. Steinkamp what I believe he is going to introduce as Government's Exhibits 1, 2 and 3. I have gone over those with Mr. Morrison, and Mr. Morrison's contention remains that he is not the person that is enumerated in paragraph 36 with that conviction.

There was -- maybe I should back up. Mr. Morrison has a pending case in Cook County, Chicago. His lawyer there is a person by the name of Edward Austin. I had asked Mr. Austin to attempt to get the photographs of the people that are itemized in the presentence investigation as Earl

Norris, Anthony Morrison and Levelle Best, and he indeed served a subpoena on the Chicago Police Department and received photos of Mr. Norris and Mr. Morrison, and indeed there was no photo of Mr. Best.  And --

THE COURT:  Mr. who?

MR. CASCARANO:  Mr. Best.  I have a copy of that subpoena.  I have -- Mr. Steinkamp has a copy of that as well, and I would like to introduce that as Defendant's Exhibit 1.  It simply is the subpoena requesting it and it says:  "Levelle Best, Earl Norris, Anthony Morrison" with regard to each case number that reflects the presentence investigation paragraph 36, 37.  And the one that's in question here ends in 3408, and that is the photo that was unavailable.  There's just no photo of Levelle Best that relates to that file.

THE COURT:  Okay.  So it sounds like we are going to have some sort of an evidentiary hearing with respect to whether paragraph 36 applies to the defendant, but not 37?

MR. CASCARANO:  Correct.

THE COURT:  Okay.  All right.  So let me hear from Mr. Steinkamp with respect to 36.

It's the Government's contention that the individual identified in paragraph 36 is in fact the defendant, correct?

MR. STEINKAMP:  That's correct, Your Honor.

1          THE COURT:  And the defendant denies that.

2          MR. STEINKAMP:  That's correct.

3          THE COURT:  Okay.  So we must have a hearing on

4    that then.

5          MR. STEINKAMP:  Yes, I believe we should, Your

6    Honor, and I think we can -- based on our discussions, I

7    think we can make it fairly efficient and short.

8          THE COURT:  Tell me how.

9          MR. STEINKAMP:  First of all, I'd offer

10   Government's Exhibits 1, 2 and 3, which I previously

11   provided to the Court.  Do you have your copies of those,

12   Your Honor?

13         THE COURT:  Put me on the spot, will you?

14         MR. STEINKAMP:  I did include --

15         THE COURT:  Are those attached to your memorandum?

16         MR. STEINKAMP:  They are, yes.

17         THE COURT:  Yes, they are.

18         Mr. Cascarano, you've seen all these, right?

19         MR. CASCARANO:  I have, Your Honor.

20         THE COURT:  As has your client?

21         MR. CASCARANO:  Yes.  I've gone over them.  And

22   for evidentiary purposes, I've indicated to Mr. Steinkamp

23   there's no reason to lay any foundation, that we would agree

24   to the admission of those three documents.

25         THE COURT:  Exhibit 1 is Minneapolis Police

1    Department Case Supplement dated October 6th?

2            MR. STEINKAMP:  That's correct, Your Honor.

3            THE COURT:  So on Monday the -- am I right about

4    that, was the 5th Monday?

5            MR. STEINKAMP:  The 5th was Monday.  I think the

6    6th was Tuesday.  The report --

7            THE COURT:  That's right, because today is the 8th

8    and it's Thursday.

9            So here it says:  "DEA Task Force sent a

10   fingerprint card via e-mail bearing the name Levelle Best,

11   DOB," et cetera, et cetera.  "The task force agent requested

12   that the fingerprint card be compared to Anthony Morrison,"

13   who is the defendant.  "Using CAPRS, a search for Anthony

14   Morrison was done and a fingerprint card bearing the name

15   Anthony Steven Morrison was obtained through the BCA

16   fingerprint database.  A fingerprint card bearing Morrison

17   was compared to the fingerprint card bearing Best, found to

18   be made by the same individual.  Comparison was verified by

19   F/S" -- I don't know what "F/S" means.  That must be some

20   title.

21           MR. STEINKAMP:  Forensic Scientist, Your Honor.

22           THE COURT:  Forensic Scientist.  "Fingerprint

23   cards will be kept on file.  Certify this is performed by

24   us."

25           Attached to that are a couple pages.  We've got

1    some fingerprints here.  January 13th of '97.  That's the

2    date of that offense, right?

3            MR. STEINKAMP:  It is, Your Honor, and there's a

4    couple ways I can --

5            THE COURT:  Well, that's -- the conviction

6    material said January 13th.  I'm remembering that right.  I

7    can flip back to --

8            MR. STEINKAMP:  Yes.

9            THE COURT:  And I know, Mr. Cascarano, that your

10   client has suffered some burns on his fingers.

11           MR. CASCARANO:  That is correct, Your Honor.

12           THE COURT:  That might explain the poor quality of

13   prints, or maybe not.  "Due to the poor quality of prints,

14   unable to confirm or deny that they are of Morrison."

15           MR. STEINKAMP:  Yes, Your Honor.  Just so you

16   know, I sent it to both Hennepin County and Minneapolis

17   Police Department, and I wanted you and Mr. Cascarano to

18   know that Hennepin County declined to do an examination, but

19   MPD did not.

20           THE COURT:  Okay.  So then they say -- is Ben, is

21   he the MPD, "because maybe Ben will have better luck with

22   MPD"?

23           MR. STEINKAMP:  Exactly.  And then --

24           THE COURT:  Then we go -- further down we're going

25   to have something from the MPD perhaps.

1          MR. STEINKAMP:  MPD is the first two pages, Your

2     Honor.  That's related to the MPD examination.

3          THE COURT:  Okay.  And, Mr. Cascarano, you have no

4     objection to the receipt of Exhibit 1?

5          MR. CASCARANO:  I do not.

6          THE COURT:  Okay.  All right.  That is received.

7     And I'll receive Exhibits 2 and 3, because I think you

8     already said you didn't object to them, so let's just look

9     at what's in there.  These also relate to the paragraph 36.

10          MR. STEINKAMP:  Yes, Your Honor.  All the exhibits

11     relate to 36.

12          (Pause - Court is reading)

13          THE COURT:  Are these from Cook County?

14          MR. CASCARANO:  Yes, Your Honor.

15          MR. STEINKAMP:  Well, Chicago Police Department.

16          THE COURT:  Pretty unusual to get anything out of

17     there, isn't it?

18          MR. STEINKAMP:  I commend Ms. Heino.  She didn't

19     quit.

20          THE COURT:  That must have been difficult.

21          MR. STEINKAMP:  I think --

22          THE COURT:  Yes.

23          PROBATION OFFICER HEINO:  (Nods head).

24          THE COURT:  She's saying yes.

25          So I don't see -- so in these police reports,

1    Exhibit 2, I've got a Levelle Best.  That's the first page.

2    Then we've got Earl Norris, possible alias Levelle Best, and

3    then other people:  Maurice Elrod, Michael Jackson, Lester

4    Ayers, Anthony White, Jerry Williams.  No Anthony Williams.

5         Oh, page 3.  Anthony Morrison.  Did I say Anthony

6    Williams?  I meant to say Morrison.

7         So page 3, Anthony Morrison.  Chased, ran under a

8    porch.  This happened on what day?  This is May of '98, so

9    this is a different -- this third page is a different --

10   it's a different deal, right?

11        MR. STEINKAMP:  That's correct, Your Honor.  That

12   has to do with the conviction for aggravated battery, but

13   it's not offered related to the career offender issue on

14   that charge.  It's offered because there's items in each of

15   those three reports that when looked at in concert will lead

16   the Court, I think, to conclude that the defendant is

17   Levelle Best, and I can explain those to you.  If you

18   receive them, I will.

19        THE COURT:  I will.  I just want to -- before I

20   hear the two of you explain what I should make of these, I

21   want to give some kind of a -- my own best shot to

22   understanding what's in there.

23        So now I just have to do Exhibit 3, which I am

24   also receiving, and this is the Cook County Criminal Court

25   Order of Sentence from May of '99.  Five years

1    concurrent with -- okay.  So this is 97CR, et cetera,

2    et cetera.  Okay.  So at least I see this.

3              And then I gather, Mr. Cascarano, you've got an

4    exhibit that you want to put in the mix here too, right?

5              MR. CASCARANO:  It is, Your Honor.  It's just,

6    again, the copy of the subpoena served upon the Chicago

7    Police Department by Attorney Ed Austin requesting photos of

8    the individuals of the three cases that would be predicates

9    for the career offender.

10             THE COURT:  Which is paragraph 36, 37 --

11             MR. CASCARANO:  And 38.

12             THE COURT:  -- and 38.  You only need two, right?

13             Isn't there one of those that you're giving up on,

14   Mr. Steinkamp?

15             MR. STEINKAMP:  Yes.  We're giving up on 38, Your

16   Honor, but that subpoena does look for all three of those.

17             THE COURT:  And you don't have any objection to my

18   receiving that?

19             MR. STEINKAMP:  No, absolutely not.

20             THE COURT:  Okay.  I'll receive it.

21             MR. CASCARANO:  Thank you, Judge.

22             (Document handed to the Court)

23             THE COURT:  And then on this Defendant's Exhibit 1

24   next to Levelle Best it says:  "No photo available."  Who

25   wrote that?

1           MR. CASCARANO: Ed Austin wrote that, Judge. And

2   if I may --

3           THE COURT: Hold on. Sounds like a baby's not

4   happy out there.

5           Mr. Cascarano?

6     (Court security officer rises to exit)

7           THE COURT: That's okay. No, no. I didn't mean

8   to make the -- if you can't cry in the hall, where can you

9   cry, right?

10          MR. CASCARANO: I should indicate to the Court

11  that I've also shown to Mr. Steinkamp and he has in his

12  possession the actual pictures that are a result of that,

13  which is one of Earl Norris, a/k/a Anthony Morrison, and

14  another picture of Anthony Morrison that reflect paragraphs

15  37 and 38.

16          THE COURT: Okay. And do you want to offer those?

17          MR. CASCARANO: No, I don't think that's

18  necessary, Judge.

19          THE COURT: Okay. But Earl Norris, this is -- I

20  guess we know that from the other documents too, that Earl

21  Norris is Mr. Morrison, according -- I mean, even according

22  to you, Mr. Cascarano, right?

23          MR. CASCARANO: Yes.

24          THE COURT: All right. Any other exhibits?

25          MR. CASCARANO: Not from the defense. Thank you,

1     Your Honor.

2          THE COURT:  Okay.  Any other exhibits from the

3     Government?

4          MR. STEINKAMP:  No, Your Honor.

5          THE COURT:  Any testimony from anybody on these

6     issues?

7          MR. CASCARANO:  Not from the defense.

8          MR. STEINKAMP:  I believe I can make some

9     statements that Mr. Cascarano will stipulate as fact;

10    otherwise, we'll have to call the probation officer, but I

11    think we can do it without testimony.

12          THE COURT:  Okay.  Give it a try.

13          MR. STEINKAMP:  All right.  Would you like me to

14    proceed?

15          THE COURT:  Yes.

16          So, Mr. Cascarano, I don't know how long this is

17    all going to take, but you can be seated, and then if he

18    says anything that you don't agree with, make yourself

19    known.

20          MR. CASCARANO:  Thank you, Judge.

21          MR. STEINKAMP:  All right.  Thank you, Your Honor.

22          I guess first of all I'd like you, if you would,

23    to look at Government's Exhibit 2.  What's significant about

24    the three pages there, there's a couple things.

25          As you note on the first page, that is related to

the January 13th, '97 arrest, and that is a description of the events, at least in part, that led to the conviction in paragraph 36, and we know that in a couple ways.

If you look in the top left of the first page of Government's Exhibit 2, you'll see there's an IR number there, do you see that, 1081088? It's in the top left. It's the second line in the gray shaded area.

THE COURT: I see the number. I can't read that it's an IR -- oh, sure enough, maybe that's what that says, but I do see the 1081088.

MR. STEINKAMP: All right. This is a number that -- this is a factual statement that I'd ask Mr. Cascarano to stipulate to; otherwise, I can put Ms. Heino on, but that is a number that stays with an individual. It's given to them by the Chicago Police Department. It stays with an individual every time they're arrested, and when their fingerprints are submitted, that's how that number is created, so it tracks with a fingerprint.

Any objection to that statement, Mr. Cascarano?

MR. CASCARANO: No. If I could just state for the record why I'm objecting to that. I contacted -- in anticipation of this hearing, I actually contacted both lawyers, Charles Ingles and Earl Franzen, who are identified in the presentence investigation as the lawyers representing the person in paragraph 37, as well as paragraph 36.

1  Mr. Ingles indicated to me that the IR number would be in

2  the file and it also tracks the individual, so I have no

3  objection to that.

4  MR. STEINKAMP:  What's important about that, Your

5  Honor, is, that IR number is used on each of the three

6  arrests, the same number.  It doesn't change.  It's 1081088.

7  When the defendant was arrested as Earl Norris, which he's

8  admitted to, that number was used.  When he was arrested as

9  Anthony Morrison, that number was also used.

10  And that is also important because that is the

11  number that is found, if you look to Government's 1, on the

12  fingerprint card page.  It's a little bit faded, but I

13  submit it says:  "1081088."  You can't see the 8 very well.

14  THE COURT:  Not the first 8.  I can see one -- I

15  see where it is and I see nothing inconsistent with 1081088.

16  The 1 is pretty clear and then the 0 is reasonably clear.

17  Then there's -- it's very unclear, and then there's 1088,

18  but --

19  MR. STEINKAMP:  Yes.  But that number was created

20  when those prints were made and then that's tracked with the

21  defendant as he's used different names, including his own.

22  Is that clear?  Okay.  Thank you.

23  THE COURT:  Any objection to that?  You don't have

24  any reason to suspect that this IR number that didn't copy

25  very well is anything different?

1          MR. CASCARANO:  I have no objection.

2          THE COURT:  And I'm prepared to find that that's

3     what that IR number is on page 2 of Exhibit 1, that that is

4     1081088.

5          MR. STEINKAMP:  Now, there's another interesting

6     point to be made between the Levelle Best report and the

7     second report, Earl Norris.

8               If you notice that when he's arrested --

9          THE COURT:  Now you're on Exhibit 2 again.

10         MR. STEINKAMP:  I apologize.  Exhibit 2, pages 1

11    and 2, Your Honor.  If you look to the top right, it'll say:

12    "Distinguishing marks, scars, disabilities."  It's up

13    underneath his height and weight.

14         THE COURT:  "RIP LITTLE GEORGE"?

15         MR. STEINKAMP:  "[R-I-P] LITTLE GEORGE" is in the

16    Levelle Best report.

17         THE COURT:  Oh.

18         MR. STEINKAMP:  If you look to the Earl Norris

19    report, which is what the defendant has -- he's admitted to

20    being convicted under that alias name, the exact same

21    tattoos are noted.  I submit that's pretty good bolstering

22    evidence that along with the fingerprints and along with the

23    other similarities in those reports that it is in fact

24    Levelle Best and you could feel confident in making that

25    conclusion.

1          THE COURT:  "Height:  6, Weight:  170; Height:  6,

2     Weight:  150.  Hair:  Black; Hair:  Black.  Hairstyle:

3     Roll; Hairstyle:  Braids.  Eyes:  Brown; Eyes:  Brown.

4     Complexion:  Medium; Complexion:  Medium."

5          MR. STEINKAMP:  All right?

6          THE COURT:  All right.

7          MR. STEINKAMP:  If I can move forward then, if you

8     look to Government's 3, what's significant about that is, at

9     the very top of the document where it says:  "People of the

10     State of Illinois versus," this is -- the criminal number is

11     the one related to paragraph 36, 97CR0569601.  It's got a

12     little 01 next to it.  It looks like a degrees or something.

13          But on the top of that document -- and this makes

14     sense because he was sentenced, as Ms. Heino has indicated

15     in the PSR, concurrently with all three cases.  It lists as

16     the defendant:  "Levelle Best, a/k/a Earl Norris, a/k/a

17     Anthony Morrison."  So all the names that are in play here

18     are listed at the top of that document.

19          And then he was -- if you read in the body, he was

20     sentenced to five years concurrent with the cases that he

21     admits are him.  So if you look in paragraph --

22          THE COURT:  Just give me one second.  I'm going to

23     go back to Government Exhibit 2, and I'm going to turn to

24     page 2, and I'm going to look for a criminal number there,

25     98 something.

1          MR. STEINKAMP:  On the arrest report, Your Honor?

2     I don't think you're going to find it there, but you may.  I

3     certainly couldn't, but you may.

4          THE COURT:  Where might I find it?

5          MR. STEINKAMP:  I don't think you will, because

6     that would have -- generally the court records would come --

7     be created after the report.  I just don't know that they'd

8     go back and --

9          THE COURT:  Oh, how about this?  I look at the

10    date on page 2, the Norris one, and the date of that is

11    February 3rd, and there's a conviction for an action taking

12    place on February 3rd, and that docket is 98CR0761804.  So

13    is that one of the -- well, that's not one of the concurrent

14    ones.  Do you see that in the PSR, paragraph 37?

15          (Mr. Steinkamp confers with Ms. Heino)

16          MR. STEINKAMP:  If you look on -- in the PSR,

17    paragraph 37, you will see that the criminal number is

18    98CR07618.  The defendant number is 04, so that correlates

19    to the court file that he was sentenced on concurrently,

20    98-7618.

21          THE COURT:  Okay.  So that's one of them.  And the

22    May of '98, the 13962 -- so he was Defendant No. 1 in that

23    one.

24          MR. STEINKAMP:  Yes.  There's a single defendant.

25    That's the aggravated battery.

1           THE COURT:  Okay.  All right.  So that adds up,

2     makes sense.

3           MR. STEINKAMP:  So he was sentenced concurrently

4     on the same day in front of the same judge on all three

5     cases, two of which he admits are his identities.  So I

6     submit that there's overwhelming evidence and certainly

7     beyond the legal standard of preponderance of evidence to

8     find that he is in fact the Levelle Best that was convicted.

9           I really don't have anything else to add.  Oh, I

10    do have one other fact to add.  I forgot.  I talked to the

11    probation officer and she indicated that she actually went

12    to see if there was a Levelle Best that had his own

13    fingerprint number in the system and there was not.

14          Correct?

15          PROBATION OFFICER HEINO:  (Shakes head).

16          MR. STEINKAMP:  There was no Levelle Best with an

17    IR number that would be independent of the defendant's.

18          THE COURT:  Okay.  Let's hear what Mr. Cascarano

19    has to say.

20          MR. CASCARANO:  So I've attempted as best I can to

21    garner documents to at least show to the Court that Levelle

22    Best, the sentencing in paragraph 36 is not Mr. Morrison.

23          I should indicate that continuing with that goal,

24    I contacted Mr. Austin again last week, and he was going to

25    order the 1997 file itself as opposed to simply the

photographs that he did previously.  He has yet to receive

that.  However, I should candidly indicate to the Court that

he didn't think there'd be much in that file since it was a

'97 case.  Back in those days it was just paperwork and not

as detailed as it is now.  However, he did order it.  We

don't have it.

I have discussed this issue with Mr. Morrison on

literally every occasion that I've seen him out in Sherburne

County.  He has been insistent that he is not Levelle Best,

and he has also indicated to me that he never went to trial

on any case as itemized in paragraph 36.  In fact, what

happened -- whoever that person might be went to trial, was

found guilty and received this five-year concurrent

sentence.

THE COURT:  Does he want to testify about that?

MR. CASCARANO:  No, he doesn't.

Now, in my further conversations with

Mr. Morrison, he indicated to me that -- and we have not

been able to identify any paperwork with regard to this --

that he was indeed arrested on January 13th, 1997 on a

different case -- it was a mere possession case -- and was

sentenced for that case, and that's why I've asked

Mr. Austin to verify that.  I, again, candidly have not been

able to do that.  But I understand -- I understand the egg

shells that Mr. Morrison might be walking on, but

1   nevertheless, he still at this date contends that that

2   conviction on paragraph 36 is not his despite the fact of

3   the evidence in Government Exhibits 1, 2 and 3.

4          THE COURT:  He understands that he's free to

5   testify about this if he wants to put some evidence in the

6   record about it, right?

7          MR. CASCARANO:  He understands that, but we are

8   not going to do that, Judge.

9          THE COURT:  Okay.  Mr. Morrison, we're talking

10   about you.  You know that if you have some evidence you want

11   to give about this, I'd be happy to hear it, right?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And do you want to testify?

14          THE DEFENDANT:  I would like to speak about it.

15          THE COURT:  But do you want to testify or not?

16   You'll have an opportunity to speak about your sentence.

17   The question here is whether you want to give evidence on

18   this point.

19          Mr. Cascarano, do you want to explain that to him?

20          (Mr. Cascarano and the defendant confer)

21          MR. CASCARANO:  Your Honor, in my conversations

22   again with Mr. Morrison, he does not intend to take the

23   stand.

24          THE COURT:  That's right, Mr. Morrison?

25          THE DEFENDANT:  Yeah.

1          THE COURT:  Mr. Cascarano, you said that some

2    records might be being searched for in Chicago.  Do you want

3    a continuance?

4          MR. CASCARANO:  On the one hand, Judge --

5          THE COURT:  I just need to know whether you're

6    requesting a continuance.  Go ahead and say, "On the one

7    hand; on the other hand."

8          MR. CASCARANO:  Can I just have 30 seconds with

9    Mr. --

10         THE COURT:  Sure.

11         (Mr. Cascarano confers with the defendant)

12         MR. CASCARANO:  For the record, Judge, I've

13   discussed this with Mr. Morrison and he would ask the Court

14   to continue the sentencing until Mr. Austin gets the 1997

15   file.

16         THE COURT:  Okay.  It can't be indefinite.

17         MR. CASCARANO:  No, I understand that.

18         THE COURT:  How much time are you asking for?

19         MR. CASCARANO:  Well -- and that's why I was

20   hesitating, because Mr. Austin indicated that he would

21   likely have that file right away, but that was ten days ago,

22   so I don't know what the process is.  In fact, he may not

23   even get the file.  I'm leaving town --

24         THE COURT:  We've rescheduled this so many times

25   on account of your schedule that we're not -- I mean,

1    there's a limit to what we can do here, so I'll give you

2    time, but --

3            MR. CASCARANO:  I'm going to be out of town, out

4    of the country, from the 18th of October through

5    November 9th.  I can do it next week.  I'll make

6    arrangements if necessary toward the end of the week.  I

7    would think --

8            THE COURT:  Why do you think that's going to be --

9    do you need to call the fellow down there and see --

10           MR. CASCARANO:  I believe that's -- I talked to

11   Mr. Austin yesterday and he thought that he might have the

12   file sometime today.  In the morning he was going to call

13   me.  That didn't happen.  So I think if we put it on

14   sometime Thursday or Friday next week.

15           THE COURT:  You seem to think I have a more open

16   calendar than I do.

17           MR. STEINKAMP:  Your Honor, I was -- could I just

18   ask the Court when you're thinking about rescheduling this

19   to?

20           THE COURT:  I'm trying to pull up my calendar.

21   The clerk is out of commission today.  I think it's

22   reasonably clear in the record how many times we've

23   continued this matter at the request of defense counsel, so

24   I will be sympathetic to the Government's scheduling issues

25   if you have any, but hold on one second.

1              MR. CASCARANO:  Your Honor, Mr. Morrison has

2     indicated to me that he no longer wants to continue.  He'd

3     just prefer to go forward today.

4              THE COURT:  Okay.  Just a second.  Let me at least

5     look and see if I can find the calendar.

6              It says it's loading.  "Please wait."  That's why

7     we're sitting here doing nothing.

8              Okay.  Monday is a holiday and I've got some time

9     on Thursday the 15th or Friday the 16th.  Mr. Cascarano, I

10    know -- you don't leave the country before that?

11             MR. CASCARANO:  No, that's fine, Judge.

12             THE COURT:  Okay.  Mr. Steinkamp, what does your

13    life look like?  In this regard.

14             (Laughter)

15             MR. STEINKAMP:  Your Honor, I don't have -- I can

16    get coverage, so -- I want this thing to get resolved, so

17    whatever you -- if you want to schedule it at a certain

18    time.  The only thing is next week Ms. Heino is not

19    available, so I think if we don't schedule it next week, we

20    will be at the end of November, is that correct?

21             MR. CASCARANO:  No, I could -- I will be back in

22    my office on November 9th.  Ninth, 10th, 11th.

23             MR. STEINKAMP:  I'd prefer it if you would

24    schedule it after November 9th if it's going to be

25    continued, but if the Court needs it to be sooner, the

1    Government will have a prosecutor present.  Ms. Heino said

2    she'd get a probation officer here to cover the hearing.

3    But it sounds like we may not need a continuance --

4            THE COURT:  Okay.  Just hold on.  See, now you're

5    into my area.

6            MR. STEINKAMP:  That's correct.  I'm sorry.

7            MR. CASCARANO:  Mr. Morrison has changed his mind.

8    He wants to continue it.

9            THE COURT:  Hold on a second.  I don't know if

10   that's a trial or what, but I could make time for you the

11   week of November 9th.  I'm not exactly sure when, but it

12   doesn't seem right to have one lawyer and one witness start

13   the hearing and then somebody else try and sweep it up.  So

14   we'll not worry about the scheduling right now.  Right now

15   I'm going to hear from Mr. Cascarano and possibly

16   Mr. Morrison.

17           All right.  Mr. Cascarano.

18           MR. CASCARANO:  I have talked to Mr. Morrison.  He

19   has changed his mind.  He would like to continue it.  I

20   don't know what else --

21           THE COURT:  He what?

22           MR. CASCARANO:  He would like the matter

23   continued.

24           THE COURT:  Okay.  Mr. Morrison, come on up to the

25   podium.

1     (Defendant approaches podium)

2              **E X A M I N A T I O N**

3     BY THE COURT:

4     Q.  You have a right to be sentenced within the limits of

5     the Speedy Trial Act.  Your sentencing has been continued

6     beyond what you might very well feel is fair or reasonable.

7              I'm now faced with a request where here we are in

8     court for sentencing addressing an issue that has only

9     really been fleshed out in the last few days and now we have

10    another request for a continuance.  I will do that, but you

11    have to understand that that has an impact on your speedy

12    trial rights.  And if you want to do that and you want to

13    waive your rights under the Speedy Trial Act so that we can

14    continue this matter, I will do it, but I need to know that

15    that's what you want.  Is that what you want?

16    A.  Yes.

17    Q.  Okay.  And you maintain that the individual who was

18    convicted in 1999, February 11th of 1999, as reflected in

19    paragraph 36 of the presentence investigation report, is not

20    you.

21    A.  Yes, ma'am.

22    Q.  And are you aware of the statement in the Government's

23    sentencing memorandum about the circumstances under which it

24    would feel that it was not bound by its plea agreement

25    recommendation that you get the acceptance of responsibility

1  points?

2  A.  Yes, ma'am.

3  Q.  So you've read that, so you've read everything that's

4  been submitted.  And you know that you have the opportunity

5  to testify about this if you want to?

6  A.  Yes, ma'am.

7  Q.  And you've decided that you don't have any evidence that

8  you want to give.

9  A.  To be honest, I would rather just wait to get the paper

10  and be prepared instead of saying something and not being

11  able to back it up.  I just really want to be prepared to go

12  forward.

13  Q.  Okay.  So you might want to testify, you just don't want

14  to testify today.

15  A.  Really, Your Honor, I just wanted like at least a week

16  to get the paperwork from the attorney in Chicago.  I didn't

17  want it to be so long or mess up the court date today

18  because I really wanted to get it done today, but I don't

19  feel like I'm all the way prepared.

20  Q.  Okay.  So my question is whether you want to testify.

21  If you do, we've got time.  I'll take your testimony here

22  and now.  But what you're saying is that you don't know

23  whether want to testify or not.  You might want to testify,

24  but you want to wait and see what the papers say, right?  So

25  you'll make a decision about whether you want to testify

1    about this limited issue in the future, but you're not

2    prepared to make that decision today?  We might as well get

3    done what we can get done today, so I'm trying to, you

4    know --

5    A.  I understand.

6    Q.  So as you stand here today, do you want to testify or

7    not?

8    A.  No, ma'am.

9    Q.  And if you don't, do you want to reserve that decision

10   for later to see what the papers say?

11   A.  Yes, ma'am.

12   Q.  All right.  Why don't you go ahead and be seated.

13        (Defendant seated)

14             THE COURT:  Well, as long as we're here, we haven't

15   even worked our way through the rest of the presentence

16   investigation report, so let's find out right now so we

17   don't have any surprises in the future whether there are

18   additional objections that need to be addressed with respect

19   to the presentence investigation report.

20             Mr. Steinkamp.

21             MR. STEINKAMP:  Since this presentence report was

22   prepared the Supreme Court decided *Johnson*, and the

23   Department of Justice has made some policy decisions

24   regarding how we handle crimes of violence as they affect

25   the career offender guidelines.  And so with that in mind, I

know you've read my memorandum saying that we are not

persisting in our claim that the aggravated battery charge

set forth in paragraph 38 is a crime of violence, so I guess

technically there's an objection to that by the Government,

that that be included in the presentence report.

THE COURT:  Well, it's included, but it's not

going to be counted as a predicate.

MR. STEINKAMP:  I guess that would be the

objection, that it be counted.  I think it says now that it

is counted, and that's just our position.

THE COURT:  No, I'm not going to count it.

MR. STEINKAMP:  Okay.  That's all -- really,

that's all I have.

THE COURT:  I mean, maybe -- and I think the

Probation Office is okay with that.  Maybe there's

information that would support it, but you're not pursuing

it, so we'll just say that's the end of that.

MR. STEINKAMP:  All right.  Thank you.  I don't

have any additions or corrections.  You've already noted the

possible change in my position on acceptance of

responsibility, so thank you.

THE COURT:  And is there anything more you want to

articulate about that?

MR. STEINKAMP:  Well, I know our plea agreement

did anticipate that if the defendant took a position -- as

1    long as he took a position that was consistent with

2    acceptance of responsibility we would most likely have moved

3    for the additional two points.  And frankly, I'd submit that

4    taking the position that he's not an individual that I

5    submit the evidence shows he is and has been convicted under

6    the identity of is not accepting responsibility, because it

7    goes directly to the length of his sentence.

8         So thank you.

9         THE COURT:  Doesn't the prison system down there

10   have some fingerprints from the person they incarcerated as

11   a result of that?

12        MR. STEINKAMP:  My understanding in speaking with

13   Ms. Heino, she called the Department of Corrections and they

14   gave her what they could give her.  She's really done a good

15   job of turning over rocks in this case.  Of course, nobody

16   wants somebody to be assessed penalties when they're

17   innocent, but I submit on this record you could find easily

18   that Defendant was convicted as Levelle Best.

19        THE COURT:  Okay.  And, Mr. Cascarano, any other

20   objections to the presentence investigation report?

21        MR. CASCARANO:  No, Your Honor.

22        THE COURT:  And do either of you have any

23   objection if I take at least a little testimony from

24   Ms. Heino right now as long as we know she's here?  I find

25   myself asking you both questions and it just might be easier

1    for me to ask Ms. Heino.

2            Well, let me just tell you what I wonder and you

3    can tell me, and then the folks can tell me whether they

4    want you to be sworn.

5                    **E X A M I N A T I O N**

6    BY THE COURT:

7    Q.  Someone was convicted by a jury in 1999 of these crimes

8    that are in paragraph 36, and then there was this sentence

9    of imprisonment, but of course it was concurrent, so it

10   would be the defendant who was incarcerated on that five

11   years anyway, wouldn't it, because we know that he's the one

12   under Norris and Morrison and those sentences were together.

13   A.  Correct.  I did call the Department of Corrections.

14   Q.  What did they say?

15   A.  I don't know that they had fingerprints, but I asked

16   them to look at what sentences Anthony Morrison was serving

17   when he was committed to the Department of Corrections in

18   1999, and they gave me all three case numbers that are the

19   three case numbers listed on all the court paperwork under

20   the name of Anthony Morrison, Earl Norris, and under Levelle

21   Best.  So the Department of Corrections confirmed that the

22   individual known as Anthony Morrison was serving the

23   sentence for the docket under the name of Levelle Best.

24   Q.  Thank you.  And you looked for records of a Levelle Best

25   in Illinois, or in the country, or -- you heard

1    Mr. Steinkamp say something about what you've done.  Can you

2    just tell us in your own words what you did?

3    A.  So yesterday I had a record check run, the same record

4    check that connected all these arrests to Anthony Morrison.

5    I asked that the second check be done under the name Levelle

6    Best with the date of birth given in that first arrest from

7    January 1997, and the only record that came up of Levelle

8    Best was Anthony Morrison.  I did not find a separate record

9    of a Levelle Best who had been connected to that arrest or

10   to any other arrest that would have been fingerprinted in

11   Chicago ever.

12   Q.  How about any indications that Mr. Morrison has ever

13   used the alias Best or Levelle?

14   A.  All three of these records under Anthony Morrison, Earl

15   Norris and Levelle Best are all connected to him by

16   fingerprints through the -- I think it's called the

17   Integrated --

18   Q.  No, but other than that.  The defendant has many, many

19   convictions and arrests and some are under aliases.  Is

20   there any indication that he has ever used -- I mean,

21   setting aside this, whether he used it or not, but setting

22   this aside, that he's ever used an alias with the last name

23   Best?

24   A.  He did not admit that to me.  He has admitted using Earl

25   Norris and there is documentation to Earl Norris arrests

1    with an alternate alias of Levelle Best, and Government

2    Exhibit 3, the judgment from the conviction at issue, lists

3    all three names.

4    Q.  Thank you.

5    A.  You're welcome.

6            THE COURT:  I think that's all the questions I

7    have.

8            Mr. Steinkamp, do you have a thought?

9            MR. STEINKAMP:  I have one more question, if I

10   could ask, of the probation officer.

11           And you're not objecting to this, Mr. Cascarano?

12           MR. CASCARANO:  No, not at all.

13                     **E X A M I N A T I O N**

14   BY MR. STEINKAMP:

15   Q.  Does Mr. Morrison have a tattoo that says:  "RIP Little

16   George" on his arm?

17   A.  Yes, he does.

18   Q.  You've seen it?

19   A.  I've seen pictures, two different pictures of it, and it

20   is in my notes from my original interview with Mr. Morrison.

21   Q.  Okay.

22           THE COURT:  Okay.  So do you have that tattoo,

23   Mr. Morrison?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Okay.

1          All right.  We will be in recess now, but

2     Mr. Cascarano, before you leave the building I want this

3     matter back on the calendar.  We can't afford to have -- I

4     can't have my calendar clerk running around trying to get

5     ahold of people again.  It's just been too difficult in this

6     case.

7          So because she is unavailable today, but you're

8     here and I'm not letting you out of here without

9     rescheduling, I'm going to have you and Mr. Steinkamp and

10    Ms. Heino come back and I'll find somebody back there who

11    can work this schedule for you.

12               MR. CASCARANO:  That's fine, Judge.

13               THE COURT:  All right.  We're in recess.

14               (Proceedings concluded at 3:42 p.m.)

15                         *     *     *     *

16

17

18

19

20

21

22

23

24

25

**I N D E X**

**E X H I B I T S**

| NUMBER | FOR ID | IN EVIDENCE |
|---|---|---|
| Government 1 - 3 | | 8 |
| Defendant 1 | | 10 |

C  E  R  T  I  F  I  C  A  T  E


I, **TIMOTHY J. WILLETTE**, Official Court Reporter

for the United States District Court, do hereby

certify that the foregoing pages are a true and

accurate transcription of my shorthand notes,

taken in the aforementioned matter, to the best

of my skill and ability.



*/s/ Timothy J. Willette*


**TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
Official Court Reporter - U.S. District Court
1005 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota  55415-2247
612.664.5108